UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| SHELLY SCHROLL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:22-CV-145-CHB-HAI |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ALLEN W. WILSON, *et al.*, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Dismiss by Defendants Rich Storm, Brian Clark, and Eric Gibson (together, the "Supervisory Defendants"). [R. 14]. Plaintiff Shelley Schroll responded in opposition [R. 31], and the Supervisory Defendants replied [R. 32]. Fully briefed, the matter is ripe for review. For the reasons that follow, the Court will grant the Supervisory Defendants' motion and dismiss Plaintiff's claims against them.

**I.   BACKGROUND**

On August 7, 2021, Plaintiff was arrested by Kentucky Fish and Wildlife Conservation Officers for Disorderly Conduct in the 2nd Degree after a confrontation with officers on Lake Cumberland. [R. 1 (Complaint), ¶ 1]. Plaintiff and her family were attending the annual "Raft-Up" event and had their boat tied to an adjacent boat when Plaintiff's son fell attempting to jump from one boat to the other. *Id.* at ¶ 19. Having witnessed the fall, Officers Keith Young and John Berry approached the family's boat to ensure Plaintiff's son was unharmed. *Id.* at ¶¶ 21, 23. A verbal altercation quickly ensued after the officers discovered Plaintiff's son, who was underage, was intoxicated and began to place him under arrest. *Id.* at ¶¶ 30–34. Plaintiff pleaded with the officers

"to not arrest her son and explained that he had just been arrested about two weeks earlier for the same thing." *Id.* at ¶ 35.

At some point during the altercation, Plaintiff "asked if [the officers] could do something to prevent onlookers from recording them with smartphones after [her son's] arrest." *Id.* at ¶ 48. Sergeant Allen Wilson, who had at that point arrived on the scene to assist the responding officers, then climbed aboard Plaintiff's boat and told her to "sit down and shut up." *Id.* at ¶ 49. Plaintiff alleges at that point, Officer Joseph Braden, who had arrived on scene with Sergeant Wilson, asked Plaintiff to get her husband's attention, but when she stood up to do so, Sergeant Wilson "violently grabbed her, put her back in her seat, and told her to shut up again" before threatening "to arrest her if she did not remain seated." *Id.* at ¶ 53. When Plaintiff explained that she was complying with Officer Braden's request, Sergeant Wilson "grabbed Shelly's arm again, violently pulled her up to her feet with force unnecessary for the situation" and arrested her. *Id.* at ¶ 53–58.

Plaintiff was detained for approximately twelve hours before her husband posted bail and she was released. *Id.* at ¶ 63. The charge against Plaintiff was ultimately dismissed without prejudice. *Id.* at ¶ 65. On August 2, 2022, Plaintiff initiated this action against the arresting officers, Defendants Wilson, Braden, Young, and Berry, bringing various federal and state law claims including false arrest, excessive force, failure to intervene, First Amendment violations, assault and battery, intentional infliction of emotional distress, and malicious prosecution. *See generally* [R. 1].

In addition to her claims against the arresting officers, Plaintiff has also brought state law claims against the Commissioner of Kentucky Fish and Wildlife, Defendant Rich Storm, in his individual capacity; the Deputy Commissioner of Kentucky Fish and Wildlife, Defendant Brian Clark, in his individual capacity; and the Director of the Law Enforcement Division of Kentucky

Fish and Wildlife, Defendant Eric Gibson, in his individual capacity for negligent hiring, training, and supervision. *Id.* at ¶¶ 108–15 (Count IX of Plaintiff's Complaint). These Supervisory Defendants have moved to dismiss each of Plaintiff's claims against them based on qualified official immunity and because Plaintiff has failed to allege any specific facts related to them. *See generally* [R. 14].[1]

## II. ANALYSIS

### A. Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (cleaned up). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

When ruling on a motion under Rule 12(b)(6), the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

---

[1] The Supervisory Defendants acknowledge that Defendant Allen Wilson, a "Sergeant who is only one rank ab[ove] the officers he supervises," was "involved in the arrest and there have been specific facts alleged as to him" and, consequently, Defendant Wilson, although a supervisory official, does not join in their motion. [R. 32, p. 3]. In contrast, "the Defendant Supervisors who join in this motion are all executive level who were never on the scene." *Id.*

referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

As stated, Plaintiff's only claims against Defendants Storm, Clark, and Gibson, contained in Count IX of her Complaint, sound in negligent hiring, training, and supervision based on their executive-level positions for Kentucky Fish and Wildlife. *See* [R. 1 (Complaint), ¶¶ 108–15]. Plaintiff stipulates that her Complaint "does not allege federal claims against Storm, Clark, or Gibson," [R. 31, p. 1], and that her claims against the Supervisory Defendants are, rather, governed by state law. The Court therefore looks to Kentucky law to determine whether Plaintiff has stated viable claims for negligent hiring, training, and/or supervision.

### i. Negligent Hiring

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n. 10 (Ky. 2014). These claims "focus on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009). "To succeed on a negligent hiring and retention claim, the plaintiff must prove (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ritchie v. Turner*, 559 S.W.3d 822, 842 (Ky. 2018) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998)). "As in any negligence case, it is necessary to show that the defendant failed to discharge a legal duty owed to the plaintiff." *Id.* (citing *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991)).

The allegations in Plaintiff's Complaint concerning negligent hiring by the Supervisory Defendants are as follows:

> 69. Upon information and belief, Defendants, Storm, Clark, and Gibson, are negligent in their hiring practices, hiring conservation officers with insufficient law enforcement training, resulting, in this instance, in the unlawful arrest of Shelly, and the failure of Defendants to intervene.
>
> . . .
>
> 110. Defendants, Storm, Clark and Gibson have a duty to ensure that the commission hires conservation officers with professional training and education in law enforcement and reasonable use of force to ensure public safety and respect for the clearly established Constitutional Rights of all Kentuckians.
>
> 113. As a result of Storm, Clark and Gibson's negligent, reckless, or intentional failures to train, hire and/or supervise the commission's conversation officers, conservation officers regularly and consistently use objectively unreasonable and excessive force in making arrests, making unreasonable seizures of person without probable cause, and initiate, criminal charges against person without probable cause that are terminated in favor of such persons, as occurred in this instance with Shelly.
>
> 114. The aforesaid acts, omissions and above-described conduct by Storm, Clark and Gibson were taken within the scope of their employment by the Kentucky Fish and Wildlife Commission as Commissioner, Deputy Commissioner and Director of Law Enforcement.
>
> 115. As a result of Defendant's conduct Shelly seeks judgment against Storm, Clark, and Gibson for actual, compensatory and punitive damages, plus attorney fees and costs.

[R. 1 (Complaint), ¶¶ 69, 110, 113–15]. These allegations are, however, merely recitations of the elements of the causes of action set forth, and they contain no plausible factual allegations against the Supervisory Defendants specifically. As to negligent hiring specifically, Plaintiff offers that the Supervisory Defendants "have a duty to ensure that the commission hires conservation officers with professional training and education in law enforcement and reasonable use of force to ensure public safety and respect," and suggests they were "negligent in their hiring practices, hiring conservation officers with insufficient law enforcement training, resulting, in this instance, in the unlawful arrest of Shelly." *Id.* at ¶¶ 110, 69. Plaintiff, however, fails to allege any facts concerning the arresting officers' prior training or fitness for the job and relies, instead, on conclusory

assumptions. Moreover, Plaintiff fails, even in a conclusory fashion, to allege that any of the Supervisory Defendants "knew or reasonably should have known that" any of the arresting officers were "unfit for the job for which" they were employed, or that their "placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ritchie*, 559 S.W.3d at 842 (Ky. 2018). In conclusory fashion, Plaintiff alleges that the officers had "insufficient law enforcement training," but Plaintiff does not attempt to explain what specifically rendered the arresting officers unfit or that the Supervisory Defendants knew or should have known they were unfit when hired, as required to succeed on a negligent hiring claim.

Plaintiff appears to acknowledge her lack of concrete factual allegations but argues her "pleading of information and belief is appropriate and necessary because specific facts regarding this allegation are solely in the possession and control of these Defendants." [R. 31, p. 3]. In her Response, she outlines the "illegal arrest, devoid of any reasonable suspicion or probable cause" by the arresting officers and argues, "[t]hese facts, further detailed in the Complaint, provide a sufficient basis to infer that these officers lacked appropriate training, that they were not adequately supervised . . . and that, based on this conduct, that they were unfit for professional roles in law enforcement." [R. 31, p. 4]. The Court cannot, however, make that inference without any factual allegations to support it. *See Sweat v. Sanders*, No. 5:18-CV-557-REW, 2019 WL 3240018, at *3 (E.D. Ky. July 17, 2019) (citing *Yanero*, 65 S.W.3d 510, 528 (Ky. 2001)) ("Kentucky does not vicariously impose individual liability on supervisors. . . . Thus, absent proof a supervisor himself directly and unreasonably employed the incompetent or himself did not, in the ministerial sense, abide by an objective conduct rule, the state supervisor will not face individual tort liability.").

In *Sweat*, the plaintiff brought claims against Kentucky State Police troopers directly involved in a high-speed chase that killed plaintiff's decedent and against several supervisory

defendants up the chain of command. *Id.* at *1. In granting the supervisory defendants' motion to dismiss, the court aptly noted,

> The Complaint lacks factual allegations, as to the hierarchical defendants, plausibly indicating a valid claim. Although the pleading contains some language tracking theories for supervisor liability, *the language is elemental and conclusory*, not adorned with further, specific factual content. Indeed, *Plaintiff alleges nothing particular to the Commissioner and Deputy Commissioner other than their positional roles and theoretical places in the training and oversight of subordinate troopers*. Plaintiff obviously hopes the Court would allow such a generic complaint to open discovery's door: ¶ 16 reflects the belief that "after reasonable discovery" Plaintiff could show deficiencies in training and supervision. *See also* DE #18 at 7 (Plaintiff seeking to "pursue discovery to see whether Defendants expressly acquiesced in or approved of the misconduct of the KSP troopers involved in the chase"). This is a cart, horse sequence. The pleading must be adequate for discovery to proceed. *See Iqbal*, 129 S. Ct. at 1950. Here, if the Court accepted these allegations as sufficient—with utterly no direct and particular empirical assertion as to conduct of the supervisory personnel—then *any plaintiff in any police case could individually sue every supervisor up the chain, surmising or believing that discovery may supply supportive facts on deficient training or oversight*. That is not the *Iqbal*/*Twombly* rubric. Speculation about possible claims does not cross the threshold, and, though recognizing the gravity of this subject matter, the Court cannot allow the generic and conclusory Complaint to go forward[.]

*Id.* at *4 (emphasis added). So too here. Although, as Plaintiff notes, the *Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant," [R. 31, p. 4] (quoting *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)), here, as in *Sweat*, Plaintiff has put the cart before the horse. The "illegal arrest," as described by Plaintiff, only provides factual allegations attributable to the arresting officers, which the Supervisory Defendants even acknowledge are sufficient to state claims against those who were on the scene. *See* [R. 32, p. 3]. But these facts only highlight the lack of factual allegations specifically linking the Supervisory Defendants to Plaintiff's claims, and the Court cannot allow discovery to proceed where the pleadings are so deficient.

### ii. Negligent Training and Supervision

Turning to Plaintiff's negligent training and supervision claims, the Court finds she has again failed to link the Supervisory Defendants with the arresting officers in any meaningful way other than by generally offering their titles as executive-level officials. "To succeed on a claim for negligent training and supervision, the plaintiff must establish that (1) the employer knew or had reason to know of the risk that the employee created; (2) the employee injured the plaintiff; and (3) the hiring, supervision and/or retention of the employee proximately caused the injury." *Short v. Marvin Keller Trucking, Inc.*, 570 F. Supp. 3d 459, 467 (E.D. Ky. 2021) (citing *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005)). Claims for negligent training and supervision are "distinguishable" from those for negligent hiring; however, they each "require that the employer's failure to exercise ordinary care in managing an employee creates a foreseeable risk of harm to the plaintiff." *Id.* at n.4.

Therefore, Plaintiff must plausibly allege that the Supervisory Defendants knew or had reason to know of the arresting officers' "harmful propensities," that the arresting officers injured her, and that the improper training practice or supervision proximately caused her injuries. *Dukes*, 213 F. Supp. 3d at 890–91. As relevant to these claims, Plaintiff's Complaint makes the following allegations:

> 67. Upon information and belief, Rich Storm ("Storm"), the Commissioner, Brian Clark ("Clark"), the Deputy Commissioner, and Eric Gibson ("Gibson"), the Director of Law Enforcement of the Kentucky Fish and Wildlife Commission, enforce a custom, policy, pattern or practice of inadequately training conservation officers in the lawful use of their arrest powers, resulting, in this instance, in the unlawful arrest of Shelly, and the failure of Defendants to intervene.
>
> 68. Upon information and belief, Defendants, Storm, Clark, and Gibson, failed to supervise their conservation officers resulting, in this instance, in the unlawful arrest of Shelly, and the failure of Defendants to intervene.
> . . .
>
> 109. Defendants, Storm and Clark are the Commissioner and Deputy Commissioner of the Kentucky Fish and Wildlife Commission, and Gibson is the

> Director of Law Enforcement of the same. These Defendants have a duty to ensure that the commission's conversation officer[s] are trained sufficiently to identify reasonable facts to support a probable cause arrest and ability to respond to such situation with reasonable force.
>
> . . .
>
> 111. Defendants, Storm, Clark, and Gibson have a duty to oversee the commission's conservation officers and supervise their conduct to ensure that their conduct does not result in violations of Kentuckian's clearly established Constitutional rights.
>
> 112. Defendant's Storm, Clark and Gibson have enforced a custom, policy, pattern of conduct, or practice among the commission's conservation officers to make unreasonable seizures of persons in the absence of reasonable suspicion or probable cause, and to initiate charges without probable cause against such persons, which are regularly and consistently not prosecuted by local prosecuting authority.

[R. 1 (Complaint), ¶¶ 67–68, 109, 111–12].

However, Plaintiff does not state, even "on information and belief," that the Supervisory Defendants played any role in actually training the arresting officers or in developing the training materials used by other officials to train the arresting officers. And, as with Plaintiff's negligent hiring claim, the Court cannot presume the Supervisory Defendants had a hand in training the arresting officers without any specific facts, accepted as true, that would allow for such a presumption. Moreover, even assuming the Supervisory Defendants did play a role in training the arresting officers, as discussed with respect to Plaintiff's negligent hiring claim, the Court cannot presume the Supervisory Defendants knew the arresting officers had any "harmful propensities," or what those specific propensities were, without any factual support.

Regarding Plaintiff's negligent supervision claim specifically, the Court observes "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker*, 350 F.3d at 517; *see also Griffin v. S. Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 WL 2948189, at *4 (W.D. Ky. June 14, 2013)

(granting summary judgment where "Plaintiff has not made any allegation that Defendant Strode knew or should have known that having Defendants Pruitt or Brown working at the WCRJ would pose a risk of harm to Plaintiff"). Plaintiff simply alleges, in conclusory fashion, that the Supervisory Defendants "enforce a custom, policy, pattern or practice of inadequately training conservation officers in the lawful use of their arrest powers," and that they "failed to supervise their conservation officers resulting, in this instance, in the unlawful arrest of Shelly, and the failure of Defendants to intervene." [R. 1 (Complaint), ¶¶ 67–68]. As stated, Plaintiff has offered no facts to allow the Court to infer that the Supervisory Defendants knew or had reason to know that the arresting officers would "violate the Plaintiff's clearly established rights," or even that the Supervisory Defendants had a supervisory relationship with any of the arresting officers. [R. 31, p. 7]. On the facts presented, Plaintiff's negligent supervision claim against the Supervisory Defendants cannot proceed.

Further, with respect to both her negligent training and supervision claims, Plaintiff's position that the Supervisory Defendants failed to enforce a policy of "not violat[ing] the Constitutional Rights of any person" is nonsensical. It is no law enforcement organization's "policy" to avoid violating individuals' constitutional rights; it is federal law. And even where a constitutional violation occurs, "officials have no vicarious liability for acts of subordinates in which they are not directly involved." *Bd. Of Trust. Of the Univ. of Kentucky v. Hayes*, 782 S.W.2d 609, 615 (Ky. 1990), overruled on other grounds by *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001); *see also Hensley v. Traxx Mgmt. Co.*, 622 S.W.3d 652, 659 (Ky. Ct. App. 2020) (quoting *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (noting that in Kentucky, "[a]n employer may also be held liable for the negligent training or supervision of its employees—but only if he or she knew or had reason to know of the risk that the employment created"); *Reed v. Speck*, 508 F. App'x

415, 421 (6th Cir. 2012) ("To succeed on a failure to train or supervise claim, a plaintiff must show that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.") (internal quotation marks omitted). As with Plaintiff's negligent hiring claim, the Court cannot impute liability on the Supervisory Defendants for negligent training or supervision where Plaintiff has alleged no specific facts to link them to Plaintiff's alleged false arrest.

For all these reasons, the Court finds Plaintiff has failed to state any claims upon which relief could be granted. Accordingly, the Court finds it appropriate to grant the Supervisory Defendants' Motion to Dismiss [R. 14] under Federal Rule of Civil Procedure 12(b)(6). Even so, in the interest of thoroughness, because the Court also finds the Supervisory Defendants are entitled to qualified immunity on each of Plaintiff's claims against them, it will make alternative findings for dismissal on those grounds.

**B. Qualified Official Immunity**

In addition to their arguments that dismissal is proper under Rule 12(b)(6) for failure to state a claim, the Supervisory Defendants also argue they are entitled to qualified official immunity[2] on each of Plaintiff's claims against them. [R. 14, p. 5]. Under Kentucky law:

> Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment []; (2) in good faith; and (3) within the scope of the employee's authority. . . .
>
> Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.,* one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.

---

[2] The Supervisory Defendants also argue they are entitled to qualified immunity to the extent Plaintiff asserts federal claims against them. [R. 14, p. 7]. However, in light of Plaintiff's stipulation that she "does not allege federal claims against Storm, Clark, or Gibson," [R. 31, p. 1], the Court will only consider Plaintiff's claims and the Supervisory Defendants' defenses under state law.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

First, with respect to Plaintiff's claim of negligent hiring, the Supervisory Defendants are correct that, in general, hiring decisions are discretionary. *See Ritchie*, 559 S.W.3d at 842 (finding school officials' duty to use reasonable care in disciplining, dismissing, or retaining teacher is "inherently a discretionary function"); *McMillen v. Windham*, No. 3:16-CV-00558-RGJ-CHL, 2020 WL 3964781, at *15 (W.D. Ky. July 13, 2020) ("As to negligent hiring and retention, decisions of whether to terminate or suspend a corrections officer for a policy violation is 'clearly a discretionary act.' Similarly, the hiring process is discretionary as long as the person being hired is not known to be incompetent.") (internal citations omitted); *Cole v. Shadoan*, 782 F. Supp. 2d 428, 435 (E.D. Ky. 2011) (finding decision to hire teacher who was not clearly unfit or unqualified for position was discretionary).

While acknowledging that "certain aspects of hiring decisions are unquestionably discretionary," Plaintiff asserts that the "decision of a public official to hire or retain a law enforcement officer known to, or known to be likely to, have violated the clearly established rights of any Kentuckian is ministerial." [R, 31, p. 5]. Plaintiff suggests the Supervisory Defendants "knew or should have known that the officer Defendants had, or were likely, to violate the Plaintiff's clearly established rights." *Id.*; *see also* [R. 1 (Complaint), ¶¶ 109–15]. Yet, as previously stated, Plaintiff's Complaint offers no specific facts that, accepted as true, would indicate any of the arresting officers were unfit or unqualified for their positions. Moreover, as the Supervisory Defendants point out, Plaintiff's Complaint is entirely devoid of any facts concerning prior misconduct or poor employment history that would have put the Supervisory Defendants on notice of the arresting officers' alleged risk to Plaintiff and other Kentuckians. On these facts, the Court cannot find that the decision to hire the arresting officers (if the Supervisory Defendants in

fact had a direct role in hiring them) was ministerial. Accordingly, the Supervisory Defendants are entitled to qualified official immunity on Plaintiff's negligent hiring claim.

Next, with respect to Plaintiff's claim for negligent training, the Supervisory Defendants are likewise entitled to qualified official immunity. Decisions concerning the content of training are discretionary. *See Hedgepath v. Pelphrey*, 520 Fed. Appx. 385, 391 (6th Cir. 2013); *Criswell v. Avery*, No. 2015-CA-001748-MR, 2017 WL 1203379, at *2 (Ky. Ct. App. Mar. 31, 2017) (emphasizing that decisions concerning content of policies and training are discretionary) (citing *Finn v. Warren Cty., Kentucky*, 768 F.3d 441, 449 (6th Cir. 2014)). However, "[a]s to training, although deciding on the content of policies and training is a discretionary function, the training of employees to adhere to their duties once that content is decided is a ministerial function." *Hedgepath*, 520 F. App'x at 391 (citing *Yanero*, 65 S.W.3d at 529).

Plaintiff suggests that the Supervisory Defendants are not entitled to qualified official immunity on this claim because they "have enforced a custom, policy, pattern or practice of inadequately training conservation officers in the lawful use of their arrest powers, resulting in the violation of Plaintiff's Constitutional Rights," which she suggests is a ministerial function because it "is a matter of Defendants failing to train their employees to follow or adhere to the content of their training." [R. 31, p. 7]. Plaintiff offers, "It is a simple and imperative element of police training that these Defendants failed to enforce: do not violate the Constitutional Rights of any person." *Id.* at 8. However, as the Court explained in the above section, refraining from constitutional violations is required by federal law and is not a "policy" of any law enforcement organization. Other than this conclusory (and illogical) allegation, Plaintiff has failed to allege any specific facts concerning the Supervisory Defendants' alleged failure to properly enforce policies and training or even explain what those specific policies are. On such bald allegations, the Court

must find that the training, if any, of the arresting officers by the Supervisory Defendants was discretionary, and they are entitled to qualified official immunity on Plaintiff's negligent training claim.

Finally, the "supervision of employees is an inherently discretionary function." *Doe v. Univ. of Kentucky*, 361 F. Supp. 3d 687, 702 (E.D. Ky. 2019), aff'd, 959 F.3d 246 (6th Cir. 2020); *see also Doe v. Patton*, 381 F.Supp.2d 595, 603 (E.D. Ky. 2005) *aff'd sub nom. Doe v. Magoffin County Fiscal Court*, 174 Fed. Appx. 962 (6th Cir. 2006) (dismissing claims for negligent supervision based on qualified official immunity where "supervision . . . was entirely discretionary and [the plaintiff] has not demonstrated any ministerial duties [supervisor] violated"). Here, Plaintiff has offered no facts demonstrating that the Supervisory Defendants knew or had reason to know that the arresting officers would violate the Plaintiff's constitutional rights or that the Supervisory Defendants even had a direct supervisory relationship with any of the arresting officers. Moreover, even assuming any such relationship existed, Plaintiff points to no ministerial duties the Supervisory Defendants violated in their supervision of the arresting officers. They are therefore entitled to qualified official immunity on Plaintiff's negligent supervision claim.

For these reasons, the Supervisory Defendants are entitled to qualified immunity on each of Plaintiff's claims against them.

### III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1. Defendants Rich Storm, Brian Clark, and Eric Gibson's Motion to Dismiss **[R. 14]** is **GRANTED**.

2. Plaintiff's claims against Defendants Rich Storm, Brian Clark, and Eric Gibson (Count IX) are **DISMISSED** with prejudice.

- 15 -

3. Plaintiff's claims **SHALL PROCEED** against Defendants Allen Wilson, Joseph Braden, Keith Young, and James Berry (Counts I–VIII) only.

This the 31st day of July, 2023.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY