UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| SHELLY SCHROLL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:22-CV-145-CHB-HAI |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ALLEN W. WILSON, *et al.*, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Allen W. Wilson, Joseph G. Braden, Keith W. Young, and James C. Berry ("the Defendants"). [R. 48]. Plaintiff Shelly Schroll responded in opposition, [R. 55], and the Defendants replied [R. 59]. Fully briefed, the matter is ripe for review. For the reasons that follow, the Court will grant Defendants' motion.

**I.  BACKGROUND**

On August 7, 2021, Plaintiff was arrested by Kentucky Fish and Wildlife Conservation Officers for Disorderly Conduct in the 2nd Degree after a confrontation with officers on Lake Cumberland. [R. 1, ¶¶ 1, 62 (Complaint)]; *see also* [R. 48-6 (Plaintiff's Jail Intake Form)]; [R. 48-7 (Order Dismissing Plaintiff's Charge)]; [R. 48-5 (Braden Body Camera) (showing Plaintiff's arrest)]. Plaintiff and her family were attending the annual "Raft-Up" event and had their boat tied to an adjacent boat when Plaintiff's son fell attempting to jump from one boat to the other. *See* [R. 1, ¶¶ 14–15]; [R. 48-2 (Young Body Camera) (showing, at seconds 0:00–0:20, Plaintiff's son attempting to get back on the boat after his fall into the water)]. Having witnessed the fall, Officers Keith Young and John Berry approached the family's boat to ensure Plaintiff's son was unharmed.

- 1 -

[R. 48-2]; *see also* [R. 50-4, p. 17:12–20 (Berry Deposition)]; [R. 50-8, pp. 45:23–46:21 (Young Deposition)]. A verbal altercation quickly ensued after the officers discovered that Plaintiff's underage son was intoxicated and placed him under arrest. [R. 48-2 (demonstrating, between minutes 1:30–5:10, officers arresting Plaintiff's son, and Plaintiff and her husband arguing with officers)]. Plaintiff pleaded with the officers to not arrest her son, since he had been arrested "a few weeks" prior for the same or similar offense. *Id.* Plaintiff's husband also asked officers to leave their son alone. *Id.*

Once Plaintiff's son was under arrest and securely on the officers' boat, Young and Berry left the scene; as they pulled away, Young reported that Plaintiff and Plaintiff's husband continued to yell from the boat. *Id.* (showing officers leaving the Schroll boat while Plaintiff and her husband continued to yell at minutes 5:10–5:30); [R. 50-8, pp. 69:11–70:10, 71:19–72:14]. Officers Joseph Braden and Allen Wilson drove their boat to meet Young and Berry's boat in the water, and Young asked them to go to the Schroll boat because there was a visible disturbance ongoing. [R. 48-2 (at minutes 6:00–6:55)]; *see also* [R. 50-5, pp. 25:3–9, 26:24–27:16 (Braden Deposition)]; [R. 50-8, pp. 73:25–75:4, 76:17–78:10, 84:19–86:2]. Braden and Wilson then began driving their boat to the Schroll boat.

Braden and Wilson testified that, while approaching the Schroll boat, they observed Plaintiff making "quick," "rash movements" and speaking loudly to people on other boats. [R. 50-5, pp. 27:18–29:2]; [R. 50-1, pp. 70:11–71:1 (Wilson Deposition)]; *see also* [R. 50-10, pp. 63:17–66:4 (Leo Schroll Deposition) (Plaintiff's younger son describing Plaintiff's actions before Braden and Wilson arrived at the Schroll boat)]. They believed that there was an altercation occurring on the boat, *see* [R. 50-5, p. 27:13–25]; [R. 50-1, pp. 70:11–71:1], but Plaintiff testified that "there wasn't" a disturbance and what the officers witnessed was her son "trying to calm [her] down"

after her other son's arrest. [R. 50-11, p. 59:16–23]. When their boat arrived at the front of the Schroll boat, Wilson boarded the Schroll boat and told the occupants of the boat to "sit down and be quiet." [R. 50-1, p. 71:1–9]. Despite this order, the officers testified that Plaintiff "was still being loud" and "not calming down." [50-5, pp. 29:19–30:1]; *see* [R. 50-1, pp. 71:1–72:1]. "She was still yelling, [ ] aggravated, and agitated." [50-5, pp. 29:20–21]; *see* [R. 50-1, pp. 71:1–72:1, 75:3–13, 77:6–10]; *see also* [R. 50-10, pp. 69:25–70:16]. Wilson continued to give orders for Plaintiff to sit down, but Plaintiff continued to stand up. [R. 50-1, pp. 71:1–72:1, 75:3–13]. Plaintiff does not deny standing up, but testified that she heard Officer Braden ask her to get her husband's attention, [R. 50-11, p. 122:1–12]; *see also* [R. 50-10, pp. 77:4–15, 78:12–21, 92:11–15 (Plaintiff's son explaining that he believed Plaintiff was following the officer's instructions but did not hear an officer state such an order)], who was at the back of the boat deflating plastic rafts when the officers arrived. [R. 50-10, p. 71:18–24]. Braden, however, testified that he never spoke to Plaintiff directly before her arrest nor asked her to get her husband, [50-5, pp. 30:2–31:14], and Wilson did not report hearing this request from Braden either. [R. 50-1, pp. 103:23–104:2, 105:6–14]. Instead, Braden testified that he was primarily engaged in conversation with Plaintiff's younger son and his girlfriend while Wilson separately attempted to gain Plaintiff's compliance, which Braden's body camera shows. [R. 50-5, pp. 30:2–31:14]; *see* [R. 50-1, pp. 105:19–106:5]; [R. 48-5 (at seconds 0:00–0:20)]. After Plaintiff stood up and walked towards the back of the boat, she claimed that Wilson "violently grabbed her [and] put her back in her seat." [R. 1, ¶ 53]; *see* [R. 50-11, p. 107:9–14]. Wilson testified that, if he did touch her, it was so minimal that he did not even remember engaging in that act. [R. 50-1, pp. 86:2–87:14]. There is no body camera evidence showing this first use of force.

At this point, Wilson made the decision to arrest Plaintiff for disorderly conduct. *See id.* at 73:2–15, 108:4–110:12. As he told her that she was under arrest, Wilson engaged in the second use of force alleged by Plaintiff by grabbing her arm to stand her up and guide her to the officers' boat. *Id.* at 73:10–17, 93:2–17; [R. 50-11, p. 73:8–21]. Plaintiff characterized Wilson's use of force as "dragging" and "forcing" her to stand up, *see* [R. 55, p. 4], but Wilson testified that any force was minimal. [R. 50-1, pp. 73:10–17, 93:2–17]. Braden's body camera shows Wilson placing his hand around Plaintiff's arm to help Plaintiff stand up, but it does not depict any violent or forceful contact. *See* [R. 48-5 (at seconds 0:14–0:28)]. Once Plaintiff was safely located on the officers' boat, Wilson and Braden took her to shore, and Braden transported her to the local detention center. [50-5, pp. 18:6–20, 43:6–12].

Plaintiff was detained for approximately twelve hours before she was released and her husband picked her up. [R. 50-11, p. 79:13–23]. The charge against Plaintiff was ultimately dismissed without prejudice. [R. 48-7 (Order Dismissing Plaintiff's Charge)]. On August 2, 2022, Plaintiff initiated this action against the arresting officers, Defendants Wilson, Braden, Young, and Berry,[1] bringing various federal and state law claims. *See generally* [R. 1] First, she asserts claims under 42 U.S.C. § 1983 against Defendant Wilson for arrest without probable cause (Count I) and excessive force (Count II) in violation of the Fourth Amendment, and for violating her First Amendment right to Freedom of Speech (Count III). *Id.* Count IV alleges an additional § 1983 claim, failure to intervene, under the Fourteenth Amendment, against Defendants Young, Berry, and Braden. *Id.* Finally, Plaintiff asserts several Kentucky state law claims, including false arrest, against Defendants Wilson and Braden (Count V); assault and battery, against Defendant Wilson

---

[1] Plaintiff pursued claims against Defendants Rich Storm, Brian Clark, and Eric Gibson, but those claims were dismissed in an earlier order. *See* [R. 33].

- 4 -

(Count VI); intentional infliction of emotional distress ("IIED") (Count VII), against Defendant Wilson; and malicious prosecution, against Defendants Wilson and Braden (Count VIII).[2] *See generally* [R. 1].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

---

[2] Plaintiff also brought suit against an unnamed defendant, John Doe. *See* [R. 1]. It appears from the record that the Complaint may have identified one of the four Defendants as two separate officers. *See id.*; *see also* [R. 50-11, p. 74:1–19 (Plaintiff explaining that Braden transported her to the detention center]. In any event, Plaintiff has not amended her Complaint to name this defendant, and the one-year statute of limitations for Plaintiff's § 1983 claim has passed, which would bar her claims against Doe if he was identified. *See Ford v. Batts*, No. 5:17-CV-94-TBR, 2019 WL 4126076, at *2 (W.D. Ky. Aug. 29, 2019) (discussing statute of limitations for § 1983 claim); ; *Gardner v. Kenton Cnty.*, No. CIV.A. 09-70 WOB-JGW, 2012 WL 6623097, at *3 n.5 (E.D. Ky. Dec. 19, 2012) (citations omitted) (noting that "[t]he naming of a 'John Doe' [defendant] does not toll the statute of limitations until such time as a real defendant may be substituted").

Once the moving party satisfies this burden, the non-moving party must then produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted); *see Turner-Meadows v. GM, LLC*, 786 F. App'x 592, 595–96 (6th Cir. 2019). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

### III.   ANALYSIS

#### A.   Waiver

Plaintiff has wholly failed to respond to the motion for summary judgment concerning Counts I, III–V, VII, and VIII. *See* [R. 55 (explaining only how the excessive force claim (Count II), and the assault and battery claims (Count VI), "still stand")]. The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citation omitted); *see also Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that "a district court properly declined to consider the merits of [a] claim because [the plaintiff] failed to address it in either his response to the summary judgment motion or his response to [the defendant's] reply"); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that a plaintiff's failure to "properly

respond" to defendants' arguments in a motion for summary judgment constitutes abandonment of a claim); *Campbell v. Hines*, No. 12-4329, 2013 WL 7899224, at *4 (6th Cir. Aug. 8, 2013) ("In light of [the plaintiff's] failure to address the defendants' arguments in his response to the summary judgment motion, the district court properly declined to consider the merits of the claims." (citations omitted)); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24–25 (6th Cir. 2003) (finding, when the plaintiffs "failed to brief the issue before the district court," that the plaintiffs abandoned their claim); *Colston v. Cleveland Pub. Libr.*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to [the d]efendants' motions for summary judgment"). Therefore, the Court considers these claims waived and will grant summary judgment as to Counts I, III–V, VII, and VIII for the Defendants. [3]

**B.     Live Disputes**

  **1.     Federal Claim (Excessive Force)**

Plaintiff's excessive force claim arises out of her arrest by Defendant Wilson and is therefore properly analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In determining whether Defendants used excessive force

---

[3] The IIED claim would be subject to dismissal regardless, as it appears to be duplicative of the assault and battery claims, and IIED is a "gap filler" under Kentucky law. *See Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014) (explaining that a "plaintiff cannot proceed on an IIED claim where the alleged conduct makes out a claim for another tort for which emotional distress damages would be available" (citations omitted)); *see also Grace v. Armstrong Coal Co., Inc.*, 2009 WL 366239 at *3 (W.D. Ky. Feb. 13, 1999) ("[A]n IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts."). An exception exists if the defendant solely intended to cause extreme emotional distress. *Green v. Floyd Co., Ky.*, 803 F.Supp.2d 652, 655 (E.D. Ky. 2011) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. App. 1999)). "But where the plaintiff merely alleges that emotional distress resulted from the defendants' conduct, not that their sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside this narrow exception and fail to state a viable IIED claim." *Bailey v. Aramark Corp.*, No. CV:16-343-JMH, 2017 WL 3841687, at *4 (E.D. Ky. Sept. 1, 2017) (citing *Vidal v. Lexington-Fayette Urban Co. Gov't*, No. 5:13-CV-117-DCR, 2014 WL 4418113, at *9 (E.D. Ky. Sept. 8, 2014)). Here, there are no allegations, much less evidence of record, to support this exception.

against Plaintiff, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

In addition to arguing the merits of this claim, Defendants have asserted that Defendant Wilson is entitled to qualified immunity on this claim. To defeat a claim of qualified immunity, "the evidence viewed in the light most favorable to the plaintiff[] must permit a reasonable juror to find that: (1) the Officers violated a constitutional right; and (2) the right was clearly established." *Lewis v. Tackett*, 697 F. Supp. 3d 702, 717 (E.D. Ky. 2023); *see also Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 695 (6th Cir. 2013) (same). The Court can examine those two prongs in either order. *See Colson v. City of Alcoa*, No. 20-6084, 2021 WL 3913040, at *4 (6th Cir. Sept. 1, 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

      a.    **Constitutional Violation**

Again, "the standard for excessive force claims is objective reasonableness." *Robinson v. City of Knoxville*, No. 24-5159, 2025 WL 621451, at *8 (6th Cir. Feb. 26 2025) (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 388). "Whether an officer's conduct is reasonable involves weighing the totality of the circumstances, with particular attention to the three *Graham* factors: (1) severity of the crime, (2) threat to officer safety, and (3) active resistance by the suspect." *Id.* (citing *Graham*, 490 U.S. at 396). "These factors are not exhaustive, but merely guide courts as they consider whether the officer's use of force was objectively reasonable under the totality of the circumstances." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1004 (6th Cir. 2024) (internal quotation marks omitted) (quoting *Palma v. Johns*, 27 F.4th 419, 428–29 (6th Cir. 2022)); *see also Leath v. Webb*, 323 F. Supp. 3d 882, 899 (E.D. Ky. 2018) ("These factors do not constitute an

exhaustive list; the ultimate question is whether the totality of the circumstances justifies a particular sort of seizure." (internal quotation marks omitted) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006))).

Considering the *Graham* factors and the overall standard of "objective reasonableness," 490 U.S. at 395 (internal quotation marks omitted), the Court finds that a constitutional violation has not occurred. While the Court recognizes that the crime at issue—disorderly conduct—was not particularly serious, *see Saalim*, 97 F.4th at 1004; *see also Goodwin v. City of Painesville*, 781 F.3d 314, 322 (6th Cir. 2015), the circumstances involved in the arrest show a heightened risk to officer safety. As Wilson and Braden testified, there were nine people on the boat, a number of whom were under suspicion of alcohol intoxication, against the two officers. Tensions were raised after Plaintiff's son was arrested, and Plaintiff was observed yelling at people on another boat and refusing to obey officer commands, which added to an already precarious situation on the water, as Braden and Wilson explained. *See* [R. 50-1, pp. 54:15–56:5, 61:17–23, 66:4–10, 72:2–8, 108:11–110:12]; [R. 50-5, pp. 45:14–47:1, 47:16–25]; *see also* [R. 48-1, p. 13 ("Wilson boarded while Braden stayed behind in the patrol boat. Wilson was therefore alone on a boat with nine strangers, at least one of whom was very agitated. That this investigation took place on the water only raised the stakes.")]. Further, while Plaintiff did not actively resist arrest by force, she repeatedly disregarded Wilson's orders to sit down and be quiet while he assessed the situation. [50-5, pp. 29:19–30:1]; [R. 50-1, pp. 71:1–72:1, 75:3–13, 77:6–10]; *see also* [R. 55, p. 2 (explaining that Wilson "directed everyone to sit down and be quiet," but Plaintiff "proceeded to approach her husband . . . to get [his] attention" for Braden)].

Multiple Sixth Circuit cases are particularly instructive on this point. Most recently, in *Robinson*, the court determined that the arresting officers "were justified in using some force to

secure [a suspect]," including "grabbing onto [the suspect's] arms, and, at most, pulling or bumping against him" when he refused to remove his hands from his pockets. 2025 WL 621451, at *8. Finding that "this degree of force was ultimately de minimis," the court reasoned that "'[n]ot every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment.'" *Id.* at *9 (citation omitted). Instead, the court found that the use of force in removing the suspect's hands from his pockets after he refused to do so was objectively reasonable under the circumstances. *Id.* at *8–9.

As the court noted, it "has permitted more extreme uses of force" than that used in *Robinson*. 2025 WL 621451, at *8. For example, *Bolden v. City of Euclid*, 595 F. App'x 464 (6th Cir. 2014), involved the use of force by an officer during an arrest. In that case, the court held that the arresting officer's actions were "objectively reasonable," as he "was justified in using some force (slapping [the suspect's] phone out of his hand and taking him to the ground) to secure a non-compliant [suspect]." *Id.* at 470–71. And in *Williams v. Ingham*, 373 F. App'x 542 (6th Cir. 2010), the court explained that "opening the driver side door [of a suspect's vehicle], taking [the suspect] by the arm, removing him from the vehicle, and taking him to the ground" constituted only "minimal force." *Id.* at 548. As these cases demonstrate, "not every push or shove" by an officer during an arrest will be evidence of excessive force. *See Robinson*, 2025 WL 621451, at *9 (citations omitted).

With these cases in mind, the conduct at issue here clearly does not meet the standard for a constitutional violation. Wilson ordered Plaintiff to sit down and follow his instructions, and when she did not do so, Wilson used "de minimis" force in sitting her down on the boat and placing his hand on her arm to guide her to the officers' boat once she was under arrest. *Cf. id.* at *9. Both of these uses of minimal force were objectively reasonable, given Plaintiff's repeated disobeying

of Wilson's instructions and the heightened concern for officer safety. Therefore, considering the *Graham* factors and, ultimately, whether Wilson's use of force was "objectively reasonable," 490 U.S. at 395 (internal quotation marks omitted), the Court finds that it was objectively reasonable, and no constitutional violation has occurred.

### b. Clearly Established Right

As one prong of the qualified immunity standard has not been met, the Court could end its inquiry here. However, even if the Court was to find that there was a constitutional violation, Plaintiff has not shown that the right was clearly established. When an officer asserts qualified immunity, the plaintiff bears the burden to show that the right was clearly established. "[T]o do so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) (citing *Cunningham v. Shelby Cnty.*, 994 F.3d 761, 766 (6th Cir. 2021)). Notably, Plaintiff only cites one case related to her excessive force claim— a case first cited by the defendants that outlines the general rule for qualified immunity. *See* [R. 48-1, p. 10 (citing *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007)]; [R. 55, p. 4 (same)]. This does not come close to satisfying her burden of pointing to a case that shows Wilson should have known the actions of putting his hand on her to sit her down or wrapping his hand around her arm to stand her up and guide her to the officers' boat, "were unconstitutional under the specific circumstances [he] encountered." *Cf. Bell*, 37 F.4th at 367 (citation omitted). Therefore, the Court finds that there was no clearly established right.

Because neither prong of the qualified immunity analysis has been satisfied, the Court holds that Defendant Wilson is entitled to qualified immunity and will grant summary judgment in favor of the Defendants on this federal claim.

## 2. State Law Claims (Battery and Assault)

Plaintiff's remaining claims—Counts V, VI, VII, and VIII—are governed exclusively by Kentucky state law. *See generally* [R. 1]. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]eclining to exercise supplemental jurisdiction after dismissing a federal claim of original jurisdiction is purely discretionary" and "remains a doctrine of discretion, not a plaintiff's right." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) (internal quotation marks and citations omitted). The Court will exercise supplemental jurisdiction over the remaining state law claims since they are sufficiently related to the federal claims in this case.

The Court will first address Plaintiff's battery claims. "[C]ommon-law battery is defined as any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Browning v. Edmonson Cnty.*, 18 F.4th 516, 531 (6th Cir. 2021) (internal quotation marks omitted) (quoting *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000)). "The use of excessive force by a police officer constitutes the intentional tort of battery." *Mills v. Owsley Cnty.*, 483 F. Supp. 3d 435, 476 (E.D. Ky. 2020) (quoting *Ali v. City of Louisville*, No. 3:05CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006)).

In this case, it is clear that Defendant Wilson's actions did not constitute battery. First, "[t]he Sixth Circuit has held that a state law battery claim fails as a matter of law when the actions of officers are reasonable under Section 1983." *Est. of Marr by and through Marr v. City of Glasgow*, No. 1:21-CV-00050-GNS-HBB, 2025 WL 359325, at *8 (W.D. Ky. Jan. 31, 2025)

(citing *Atwell v. Hart Cnty.*, 122 F. App'x 215, 219 (6th Cir. 2005)); *see also Fultz v. Whittaker*, 261 F. Supp. 2d 767, 783 (W.D. Ky. 2003)); *Grant v. Wilson*, No. 6:19-cv-00165-GFVT-HAI, 2021 WL 2636010, at *11 (E.D. Ky. June 25, 2021) ("[U]nder Kentucky law, a battery claim must fail where a police officer's conduct is deemed objectively reasonable in the § 1983 context." (citing *Atwell*, 122 F. App'x at 219)).

Second, Wilson is entitled to state-law immunity for his actions taken in arresting Plaintiff. "Kentucky's qualified immunity doctrine shields officers from state-law liability. Qualified immunity in Kentucky protects officers from liability for 'good faith judgment calls made in a legally uncertain environment.'" *Wynn v. City of Covington*, No. CV 21-137-DLB-CJS, 2024 WL 3855662, at *12 (E.D. Ky. Aug. 16, 2024), *appeal filed*, No. 24-5840 (6th Cir. Sept. 13, 2024) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). "Qualified immunity attaches to public officers sued in their individual capacities performing discretionary acts in good faith that are within the employee's scope of authority." *Downing v. Petry*, No. CV 5:20-187-DCR, 2021 WL 3610036, at *8 (E.D. Ky. Aug. 13, 2021) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). The Plaintiff argues that "the determination of use of force is discretionary, but only to a point." [R. 55, p. 5]. While it is unclear what this "point" is, since Plaintiff did not cite to any case law to support this assertion, the Court finds that Wilson's use of force was discretionary. "An officer's decision regarding the amount of force required in a particular situation is a discretionary act." *Downing*, 2021 WL 3610036, at *9 (citing *Casey v. Sanders*, No. 7:17-CV-145-KKC, 2018 WL 3078758, at *8 (E.D. Ky. June 21, 2018)); *see also Mitchell v. Conrad*, No. 3:20-CV-530-DJH-RSE, 2025 WL 950867, at *5 (W.D. Ky. Mar. 28, 2025), *appeal filed*, No. 25-5417 (6th Cir. May 6, 2025) ("An officer's use-of-force determination is a discretionary act . . . [that] falls within the scope of his authority." (quoting *Franke v. Janes*, No. 3:23-CV-119-RGJ-RSE, 2025 WL 269179,

- 13 -

at *7 (W.D. Ky. Jan. 22, 2025)) (internal quotation marks omitted)). Therefore, because Wilson has shown "*prima facie* that the act was performed within the scope of his . . . discretionary authority," *id.* (internal quotation marks omitted) (quoting *Yanero*, 65 S.W.3d at 523), "the burden shifts to the plaintiff to demonstrate that the act was performed in bad faith." *Bruck v. Petry*, No. 5: 21-152-DCR, 2022 WL 2109187, at *12 (E.D. Ky. June 10, 2022) (citing *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001)).

> To show that an officer acted in bad faith when making an on-the-spot judgment call, the plaintiff must demonstrate that the officer "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the [plaintiff's] rights or that the officer took the action with the malicious intent to cause a deprivation of constitutional rights or other injury."

*Downing*, 2021 WL 3610036, at *9 (alteration in original) (quoting *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007)). The Plaintiff made no mention of bad faith in her response, but even upon independent review by this Court, there is no evidence that Wilson acted in bad faith. Again, his actions did not constitute a constitutional violation, and there is no evidence in the record that shows Wilson acted in bad faith. *See id.* ("Since [the defendant's] actions were objectively reasonable in the § 1983 context, the Court further concludes that [the plaintiff] could not demonstrate that [the defendant's] use of force was in bad faith."); *Wynn*, 2024 WL 3855662, at *12 (determining that officers were entitled to state law immunity because their actions "were not considered excessive force" under the Fourth Amendment, and the "[p]laintiff provide[d] no evidence, direct or circumstantial, that [the officers] acted in bad faith").

The Court lastly considers Plaintiff's assault claim against Wilson. "[A]ssault occurs when one intentionally threatens to touch another." *Hadden v. Wathen*, No. 116CV00140GNSHBB, 2018 WL 4222882, at *16 (W.D. Ky. Sept. 5, 2018*); see also Banks v. Fritsch*, 39 S.W. 3d 474, 480 (Ky. Ct. App. 2001). Further, the threat must be "under such circumstances as create a well-

founded fear of imminent peril." *Brown v. Crawford*, 177 S.W.2d 1, 2–3 (Ky. 1944); *Smith v. Gowdy*, 244 S.W. 678, 679 (Ky. 1922), *abrogated on other grounds by*, *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012)) (citation omitted). "Intent is an essential element of assault." *Linton v. Riddle*, No. 3:08-CV-605, 2010 WL 2106669, at *2 (W.D. Ky. May 24, 2010) (internal citations omitted).

The Court finds that Plaintiff has wholly waived this claim. *See Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006). She contends that the assault claim still stands in her response to Defendants' motion, *see* [R. 55, pp. 4–5], but she does not identify any relevant case law or specific evidence of assault. Instead, she only mentions the uses of force in Wilson moving her across the boat and standing her up to arrest her, which fail because the Court has already determined that Wilson's actions were reasonable. *See Atwell*, 122 F. App'x at 219 ("Having concluded that the actions of the [ ] personnel that are the basis of [a]ppellant['s] [ ] assault and battery claim were objectively reasonable in the § 1983 context, [the court] further conclude[s] that [the appellant] could not prove his claim under Kentucky law." (citation omitted)); *see also Fultz*, 261 F. Supp. 2d at 783; *Grant*, 2021 WL 2636010, at *11; *Downing*, 2021 WL 3610036, at *9 (citing *Atwell*, 122 F. App'x at 219). Regardless, for the same reasons as stated above, Wilson is entitled to state law immunity under Kentucky law. Therefore, the Court will grant summary judgment on Count VI, the assault and battery claim.

## IV.    CONCLUSION

In sum, the Court will grant Defendants' Motion for Summary Judgment, [R. 48], on all the federal and state law claims.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendants Wilson, Braden, Young, and Berry's Motion for Summary Judgment, [**R. 48**], is **GRANTED.**

2. A judgment will be entered consistent with this Order.

This the 7th day of July, 2025.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY